

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00564-CR

Isidro **RAMOS** III,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2015CR9685
Honorable Melisa Skinner, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:          Luz Elena D. Chapa, Justice
                 Beth Watkins, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: September 15, 2021

AFFIRMED

Isidro Ramos appeals the order denying his motion for forensic DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. We affirm the trial court's order.

### BACKGROUND

Ramos was convicted in July 2017 of one count of continuous sexual abuse of a child and five counts of sexual assault of a child. Ramos appealed, and after reforming the judgments to correct clerical errors, this court affirmed the judgments. *Ramos v. State*, No. 04-17-00446-CR,

2018 WL 6793545 (Tex. App.—San Antonio Dec. 27, 2018, no pet.) (mem. op., not designated for publication).

The evidence at Ramos's trial established that on December 8, 2014, he lived in a house with his girlfriend and two of her daughters. That day, Ramos's girlfriend came home from work early and discovered Ramos coming out of their bedroom with his pants undone and her then fourteen-year-old daughter, the complainant, in the bedroom naked from the waist down. Ramos left the house, and the complainant gave a statement to the police. Ramos was arrested that day, and both Ramos and the complainant were examined by a sexual abuse nurse examiner (SANE).

At trial, the complainant testified Ramos had started sexually assaulting her when she was in the seventh grade. She described Ramos's assaultive conduct in the years preceding Ramos's arrest. She testified that on the day of his arrest, Ramos picked her up from school and took her home. She testified he told her to go to her mother's bedroom, but she refused. She testified he then "got me by my hand and told me to go and I told him no. And he pulled me to my mom's room, took my pants off of me, laid me down and got on top of me, put his penis in my vagina." At that point her mother walked in the house and Ramos quickly got off her and walked out of the room.

In addition to the testimony of the complainant and several outcry witnesses, the State presented the testimony of forensic scientists employed by the Bexar County Criminal Investigation Laboratory. One of the scientists testified he examined some of the clothing that had been collected on December 8, 2014, and identified the presence of sperm on the complainant's underwear. Another scientist testified she created known DNA profiles for both Ramos and the complainant, and she conducted further testing on the complainant's underwear, Ramos's underwear, and penile swabs taken from Ramos. The scientist testified she found only two donors of DNA indicated on the cutting from the complainant's underwear. One donor was the

complainant, and Ramos could not be excluded as the second source. Ramos's underwear and the penile swabs also contained only two donors of human DNA; one was Ramos, and the complainant could not be excluded as the second source.

On cross-examination, Ramos questioned the scientist about DNA transfer. He elicited testimony that it was possible for semen to be transferred in comingled laundry. The scientist also testified the complainant's DNA could have gotten on Ramos's hands if he had rubbed the complainant's neck. And she agreed it would be possible for Ramos to have transferred the complainant's DNA from his hands to his penis if he urinated soon after rubbing her neck.

In his closing argument at trial, Ramos argued the complainant changed her story multiple times, was not credible, and she should not be believed. Counsel expressly stated Ramos did not deny the DNA findings but argued there was an innocent explanation—secondary transfer and laundry transfer. Ramos made essentially the same arguments on appeal in support of his contention the evidence was legally insufficient to support the judgments. *See Ramos*, 2018 WL 6793545 at *1.

### THE CHAPTER 64 MOTION FOR DNA TESTING

In December 2019, Ramos filed a motion for forensic DNA testing under Chapter 64. Ramos requested DNA testing of hand and finger swabs alleged to have been taken from him in his December 8, 2014 SANE exam. In support of the motion, Ramos referred to a report of the examination introduced at trial by the State, which indicates such swabs were taken and included in the kit prepared by the SANE. Ramos's affidavit in support of his motion stated:

> the DNA found on my penis and boxers came from secondary transfer from my hands, after I picked the Complainant up from school, I had rubbed the back of her neck when she said she didn't feel well, then once we got home I immediately went in to urinate. The DNA on my hands would have had to have transferred at that point. . . . Had my trial attorney had the previously collected hand and finger swabs tested, a positive result for the complainant's DNA would have supported the defensive theory of secondary transfer, and the jury could have found me not guilty.

The State responded to Ramos's motion, and thereafter, the trial court signed an order denying the motion for DNA testing. The trial court found "there was sufficient evidence establishing [Ramos]'s identity and guilt," did "not find reasonable grounds for th[e] motion for Post Conviction DNA Testing to be filed," and found "that [Ramos] has not established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing."

## DISCUSSION

Ramos filed a pro se brief, arguing the trial court erred because the DNA testing results he seeks would have supported his defensive theory and made it likely he would have been acquitted. The State contends Ramos did not meet the requirements for post-conviction DNA testing under Chapter 64.

"There is no free-standing due-process right to DNA testing, and the task of fashioning rules to 'harness DNA's power to prove innocence without unnecessarily overthrowing the established system of criminal justice' belongs 'primarily to the legislature.'" *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011). Under the procedures established by the Texas Legislature in Chapter 64, the convicting court may order DNA testing *only* if the court finds (1) the evidence "still exists and is in a condition making DNA testing possible;" (2) the evidence "has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;" (3) "there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing;" and (4) "identity was or is an issue in the case." TEX. CODE CRIM. PROC. art. 64.03(a)(1). In addition, the convicted person must establish "by a preponderance of the evidence that" he "would not have been convicted if exculpatory results had been obtained through DNA testing;" and "the request for the proposed

DNA testing is not made to unreasonably delay the execution of sentence or administration of justice." *Id.* art. 64.03(a)(2).

We review the trial court's ruling on a Chapter 64 motion using a bifurcated standard; we give almost total deference to the trial court's resolution of historical fact issues that are supported by the record and to applications-of-law-to-fact issues that turn on witness credibility and demeanor. *Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017). We review *de novo* all other application-of-law-to-fact questions. *Id.* at 768-69.

Ramos argues the trial court erred because he is entitled to DNA testing of any untested biological material[1] that would have supported his defensive argument, and he asserts the legislature has not limited Chapter 64 DNA testing to issues of identity. The State contends the trial court's order must be affirmed because identity is not an issue in the case and Ramos did not show that DNA testing would yield exculpatory results or that such results would likely have caused the jury to not convict him. We agree with the State.

Contrary to Ramos's argument, the legislature in article 64.03(a)(1)(C) expressly required that identity be in issue before DNA testing may be ordered. Ramos has never claimed that another person sexually assaulted the complainant, and he has not denied his DNA was present on her underwear or that the complainant's DNA was present on his penis and underwear. Nor does he contend the DNA testing he requests will establish the complainant was not the victim of continuous sexual abuse of a child or of multiple sexual assaults. Rather, he argues only that the presence of complainant's DNA on his hands on December 8, 2014 would be consistent with his alternative explanation for how her DNA came to be found on his penis and underwear on that day. Because identity was not and is not in issue in this case, the trial court did not err in denying

---

[1] The State did not provide a complete inventory of the biological material in its possession, and the record does not reflect whether the hand and finger swabs still existed and are in a condition that make DNA testing possible.

Ramos's Chapter 64 motion. *See Garcia v. State*, 327 S.W.3d 269, 271 (Tex. App.—San Antonio 2010, pet. ref'd) (holding article 64.03(a)(1) requires that identity of the perpetrator must be in question before testing may be ordered and discussing cases); *In re State ex rel. Villalobos*, 218 S.W.3d 837, 840 (Tex. App.—Corpus Christi 2007, orig. proceeding) (where movant did not deny blood was his and did not contend State prosecuted wrong person, but argued only that identifying whose blood is on towel and car door would help establish his self-defense claim, held that identity was not in issue and trial court erred by ordering DNA testing).

Further, Ramos failed to establish by a preponderance of the evidence (more than a fifty percent chance) that he would not have been convicted if exculpatory results from the requested DNA testing had been available at trial. *See* TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A); *Hall v. State*, 569 S.W.3d 646, 655 (Tex. Crim. App. 2019). As used in article 64.03(a)(2)(A), "'[e]xculpatory results' means only results excluding the convicted person as the donor of the DNA." *Hall*, 569 S.W.3d at 655-56. Although evidence that the complainant's DNA had been on Ramos's hands on December 8, 2014, might have been consistent with his theory of secondary transfer, it also would have been consistent with Ramos having sexually assaulted the complainant that day in the manner the complainant testified. And it would have had no bearing at all on the other five counts for which Ramos was convicted. Thus, even if a finding that complainant's DNA was on Ramos's hands were considered "exculpatory," we agree with the trial court that Ramos failed to establish by a preponderance of the evidence that he would not have been convicted had the results of DNA tests of the swabs of his hands and fingers been presented to the jury. The trial court correctly concluded Ramos did not meet the requirements of article 64.03.

After filing his pro se brief, Ramos filed a motion for appointment of counsel, which was carried with the appeal. An indigent convicted person who intends to file a motion for post-conviction DNA testing has a right to appointed counsel if the trial judge finds that reasonable

grounds exist for the filing of a motion. TEX. CODE CRIM. PROC. art. 64.01(c); *see Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011). Here, the trial judge found that reasonable grounds for such a motion did not exist. For the reasons explained above, we agree and Ramos's motion for appointed counsel is therefore denied.

We conclude the trial court did not err in denying Ramos's motion for forensic DNA testing, and we affirm the trial court's order.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH